# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

SEAN FINN, as the assignee of EXCEL § 
IMAGING SERVICES, LLC, § 
§ 
                Plaintiff, § 
§       Civil Action No. 4:17-CV-000036
v. § 
§ 
PATRICK DOYLE, individually and d/b/a § 
MEDIAL EXPORTERS AND MEDICAL § 
EXPORTERS, LLC. § 
§ 
            Defendants, § 

## PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO DISMISS
## OR TRANSFER VENUE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................................................ii

II. BACKGROUND ............................................................................................................ 1

III. ARGUMENT AND AUTHORITY .............................................................................. 6

    A.    Court has Jurisdiction over Defendants ............................................................... 6

    B.    Venue is Proper in this District ......................................................................... 15

    C.    Case should not be Transferred under Defendants Motion to Transfer Venue ................ 18

IV. CONCLUSION ............................................................................................................ 20

Case 3:17-cv-00399-TAV-HBG   Document 13   Filed 03/24/17   Page 2 of 25   PageID #: 194

# **TABLE OF AUTHORITIES**

**Cases**

*Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694 (5th Cir.1999), cert. denied, 531 U.S. 917, 121 S.Ct. 275, 292, 148 L.Ed.2d 200 (2000)...........................................................................9

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000))........................................7

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).......................................16

*Bates v. C&S Adjusters, Inc.* 980 F.2d 865 (2nd Cir. 1992)...................................................16

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 F. App'x 612 (5th Cir. 2007)..............16

*Burger King v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174 85 L.Ed.2d 528 (1985))............10

*Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141 (3rd Cir. 1992)) cert. denied, 506 U.S. 817 (1992).......................................................................................................................................11

*Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010)..............................................................10

*Daimler AG v. Bauman,* 571 U.S. ____ (2014), 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014)............10

*Daniel v. American Bd. Of Emerg. Med*, 428 F.3d 408 (2nd Cir. 2005).................................15

*Eddy v. Printers House (P) Ltd.*, 627 F. App'x 323 (5th Cir. 2015)..........................................7

*Evergreen Media Holdings, LLC v. Safran Co*., 68 F. Supp. 3d 664 (S.D. Tex., 2014)..........9

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962).....................................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011).........................7

*Guidry v. U.S. Tobacco Co., Inc.* 188 F.3d 619 (5th Cir. 1999)........................................8, 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).........................................................................................................................................9

*Herman v. Cataphora, Inc.* 730 F.3d 460 (5th. Cir., 2013).....................................................15

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc*., 321 F.2d 53 (5th Cir. 1963).....................18

*ICEE Distributors Inc. V. J&J Snack Foods Corp*., 325 F.3d 586 (5th Cir. 2003)................10

ii

*In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) ..................................... 18, 19

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F.3d 193 (5th Cir., 2016) ... 7, 8, 10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)........................................................................ 7

*Invesco v. McGowan* No. 6:10-CV-624, 2011 U.S. Dist. LEXIS 116467 (E.D. Tex. Sept. 8, 2011).. 13

*J.D. Fields & Co. v. Nucor-Yamato Steel Co.,* No. H-12-1918 (S.D. 2012)........................................ 19

*Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir.) ....................................... 9

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001)...................................................................... 8, 11

*Luv N' Care, Ltd. v. Insta–Mix, Inc*., 438 F.3d 465 (5th Cir.) ....................................................... 9

*McFadin v. Gerber*, 587 F.3d 753 (5ᵗʰ Cir. 2009) ...................................................... 10, 12, 14

*Michiana Easy Livin' Country, Inc. v. Hoiten*, 168 S.W.3d 777 (Tex. 2005) .................................... 10

*Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999)............................................................... 7

*Monkton Ins. Servs. Ltd. v. Ritter,* 768 F.3d 429 (5th Cir. 2014) ............................................. 8, 10

*Moran v. Smith* No. 5:15-CV-1121-DAE (W.D. Tex., 2016) ....................................................... 17

*Panda Brandywine Corp. v. Potomac Electric Power Co*., 253 F.3d 865 (5th Cir. 2001) ................... 8

*Pecoraro v. Sky Ranch for Boys, Inc.* 340 F.3d 558, 563 (8ᵗʰ Cir. 2003)....................................... 16

*Pervasive Software Inc*. *v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012) ....................... 7

*Revell v. Lidov,* 317 F.3vd 467 (5th Cir.2002) ....................................................................... 8

*Rushmore Investment Advisors, Inc. v. Frey*, 231 S.W.3d 524 (5th Cir. 2007) ................................ 10

*Seiferth v. Helicopteros Atuneros, Inc.* 472 F.3d 266 (5ᵗʰ Cir. 2006)........................................... 14

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000) ............................................... 11

*Uffner v. LaReunion Francaise*, S.A 244 F.3d 38 (1ˢᵗ Cir. 2001........................................................ 16

*Walden v. Fiore*, 134 S. Ct. 1115 (2014)) ........................................................................... 10

*Walk Haydel & Associates v. Coastal Power Prod.*, 517 F.3d 235 (5th. Cir., 2008).......................... 11

iii

*Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ............................................... 14

*Wien Air Alaska, Inc. v. Brandt*, 1956 F.3d 208 (5th Cir. 1999) ..................................... 11, 12

*Wilson v. Belin*, 20 F.3d 644 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)) ........................................ 8

*Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3-15-cv-3797, 2016 WL 1357742, at *3 (N.D.

Tex. Apr. 5, 2016) .................................................................................................................. 15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) 100 S. Ct. 559, 567 (1980) .......... 14

**Statutes**

28 U.S.C. §1391 .......................................................................................................................... 22

28 U.S.C. §1391(b)(2) ................................................................................................................. 20

28 U.S.C. §1404(a) ...................................................................................................................... 22

28 U.S.C. §1404(a). ..................................................................................................................... 21

28 U.S.C. 1391(b) ........................................................................................................................ 19

28 U.S.C. 1391(b)(2) ................................................................................................................... 19

Title 12. §95(3) ........................................................................................................................ 18, 21

Case 3:17-cv-00399-TAV-HBG   Document 13   Filed 03/24/17   Page 5 of 25   PageID #: 197

# I. <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

After Defendants initially filed their Motion to Dismiss, Plaintiff, Sean Finn, as the assignee of Excel Imaging Services, LLC (hereinafter referred to as "Excel" and/or "Plaintiff") filed Plaintiff's First Amended Complaint which is incorporated herein by reference. (Dkt. #7). Defendants have now filed Defendants' Motion to Dismiss. [1]

Defendants, Patrick Doyle, individually and d/b/a Medical Exporters and Medical Exporters, LLC (collectively hereinafter referred to as "Defendants") have had business contacts with Texas that are continuous and systematic. Defendants have engaged in substantial activities in Texas within the past 5 years. There were at least 50 prior business deals coordinated with Sean Finn ("Finn") the President of Excel and Defendants where the place of payment was agreed upon to be Bank of America located in Houston Texas. There are also substantial activities of Defendants in Texas that relate to other business deals not involving Excel.

In addition to breach of contract claims, Excel has independent tort claims against Defendants arising from Defendants' misrepresentations to Excel made in March 2014 at a business meeting attended by Doyle at Excel's office in Houston Texas. Defendants made other misrepresentations in email delivered to Excel at its Houston office and other misrepresentations made directly by Defendants to Excel in Houston Texas by telephone. Excel believes this Court has personal jurisdiction over Doyle and Medical Exporters and venue is proper.

# II. <u>BACKGROUND</u>

---

[1] In their first Motion to Dismiss filed in January 2017, Doyle submitted a declaration that omitted any reference to his attendance at the March 2014 meeting in Texas with Excel and swore that to the best of his memory, he, "…had only been to Texas twice in the last two decades, both times to visit friends and family and not for any business reason." After Plaintiff filed his response and amended his pleadings, Doyle refiled a Motion to Dismiss, but now admits attending the meeting and being in Texas for business purposes. ((See Declaration of Sean Finn¶¶ 71-79 (Exhibit 1) comparing Doyle's original declaration filed on January 13, 2017 (See Exhibit F attached to Finn Decl.-Exhibit 1) with the subsequent March 3, 2017 Declaration (Patrick Doyle Declaration (Exhibit "A") to Defendants' Motion to Dismiss or Transfer Venue)). The contradictions and inconsistencies in the Doyle Declarations raise serious issues of credibility where Doyle should appear for an evidentiary hearing. Finn's Declaration contradicts the "lack of" jurisdictional assertions by Doyle.

1

Defendants and Plaintiff, Sean Finn, as the assignee of Excel Imaging Services, LLC (hereinafter referred to as "Excel" and/or "Plaintiff") had a continuing and long standing business relationship that started in 2012 and continued through February 2015. See Exhibit. 1: Declaration of Sean Finn ("Finn Decl."). Finn Decl. ¶ 12-61. Finn ("Finn") has been a Texas resident since 2000 and since that time, he has been in the business of buying and selling of medical diagnostic equipment. Finn Decl. ¶¶ 2 and 3. Finn established WPEF, LLC. ("WPEF"). Between 2012 and 2015, WPEF conducted business in Texas in a home office on Wickford Dr. in Houston Texas.[2] Id. ¶ 4.

In or about 2011, Finn desired to bring in a family member and a friend into the business.[3] Id. ¶ 5. Although Excel was formed in Oklahoma, Excel had its office in Houston, Texas on Wickford Dr. as well. Since May 2012, Finn has conducted business on behalf of Excel from this office (the "Houston Office").[4] Excel does not have a physical office in Oklahoma. Id. ¶¶ 6-10.

In early 2012 Doyle solicited Finn at the Houston Office, advising that Doyle had set up Medical Exporters and was looking for ways to make money in the medical diagnostic equipment industry. Id. ¶ 12. From May 2012 and continuing through February 2015, Defendants and Finn completed at least 50 business deals together.[5] Id. ¶ 14. The Houston Office was the hub location for all business deals. These deals had their genesis in phone conversations and negotiations between Defendants and Finn while Finn was located in Houston, Texas. Finn only gave approval from the Houston Office. Id. ¶ 15.

All bank accounts for Excel and WPEF were set up in Texas by Finn. Between May 2012 and February 2015, all of the payments made by Defendants on deals, (except one) were paid to the WPEF Bank of America account located in Houston Texas as instructed by Finn.[6] At no time was any money ever delivered by Defendants to Excel in any State other than Texas. Id. ¶ 16.

---

[2] Finn owned 100% of WPEF. WPEF's office in Houston was on Wickford Dr.
[3] The principals of Excel are Finn, Finn's brother Shannon Finn and Larry Smith with each owning a one-third interest.
[4] Finn is the President of Excel and this was the same office as WPEF.
[5] Finn was acting as a representative of Excel and WPEF.
[6] There was one payment that Doyle paid on a deal in 2013 to Excel's Bank of America account in Houston Texas.

2

These deals involved substantial amounts of money, with the average cost of the medical diagnostic equipment bought or sold generally between $30,000.00 and $150,000 each. *Id.* ¶ 17.

Defendants wired funds to Excel and/or WPEF's Bank of America in Houston Texas at least 20 times. Each wiring of funds often included a net amount from several deals. [7]

Doyle advised Finn that between May 2012 and December 2014, that their business deals generated more than half of Doyle and Medical Exporter's business revenues. *Id.* ¶ 19. Defendants routinely contacted Finn in Texas, seeking to act as an intermediary to help sell Excel equipment for a small fee. *Id.* ¶ 20. In other deals, Defendants found equipment sellers and contacted Finn at the Houston Office by phone or email to negotiate deals. Defendants would give Finn wiring instructions and money was wired from Texas to Defendants, who would use the money to purchase medical diagnostic equipment. There were numerous other deals. *Id.* ¶¶ 21-22.

There were at least 20 deals where Defendants found or had buyers looking for equipment. Defendants would contact Finn and ask whether the equipment sought could be obtained. Calls and emails were made by Doyle to Finn while Finn was in the Houston Office. *Id.* ¶ 23. Prior to February 18, 2015 Excel trusted and confided in Doyle and Medical Exporters. There was a long standing substantial prior history of working together and Excel relied on Doyle and Medical Exporters in the past and trusted them with handling funds that belonged to Excel and/or WPEF. *Id.* ¶¶ 23-24.

In or about March 2014, Doyle came to Houston Texas and met with Finn at Excel's Houston Office to discuss business (the "March 2014 meeting").[8] *Id.* ¶ 26. At the March 2014 meeting, Doyle told Finn that Doyle and Medical Exporters had partnered up with a group of Texas investors located in Houston/Clear Lake Texas (the "Texas Finance Group") and that they were providing Doyle and Medical Exporters with a continuing and substantial line of credit and financing. *Id.* ¶ 27.

---

[7] There were occasions when Doyle would wire money from his personal account and other times Doyle would wire money from Medical Exporter's account. Finn Decl. ¶ 18.

[8] Prior to this meeting, Doyle knew that Finn was representing Excel. After the meeting, Doyle sent Excel invoice 1504 to Excel's Houston Office at Wickford Dr. arising from Excel's $30,000.00 purchase of equipment. At all times, Doyle knew the Houston Office was Excel's Houston Office in Texas. (See Exhibit "G" attached to Finn Decl. Exhibit 1 and ¶75-76.)

3

At the March 2014 meeting, Doyle said that Defendants had the ability to handle larger purchases due to the relationship with Texas Finance Group and that Doyle and Medical Exporters, together with the Texas Finance Group, purchased several PET/CT systems, including one located in Texas. Doyle and Medical Exporters were storing a PET/CT system in Schulenburg, Texas. *Id.* ¶ 28.

At the March 2014 meeting, Doyle told Finn about other deals Doyle was working on in Texas.[9] *Id.* ¶¶ 29-30. In April 2014, Doyle contacted Finn about buying a MRI system located in Lubbock, Texas.[10] *Id.* ¶ 31. In May 2014, Doyle asked Finn to purchase a "coach" located in Texas and Doyle and Medical Exporters bought the coach from Excel and delivered it to a company in California. *Id.* ¶ 32.

On December 28, 2014, Excel received an email from Doyle at the Houston Office advising that Doyle wanted Excel to refinance medical diagnostic equipment (the "2008 Siemens Coach")[11] that was previously financed by the Texas Finance Group.[12] Doyle represented he had accounts receivables that could cover the 2008 Siemens Coach and had sold a cyclotron for $1.8 million against a transfer fee of $1.35 million. Doyle also represented that the first 40% would be in on February 15, 2015. A copy of the December 28, 2014 email is attached to Finn's Decl. as Exhibit "A". *Id.* ¶¶ 33-34.

In or about January 2015, Doyle contacted Finn in Houston saying that Doyle had a buyer, Siemens Medical Solutions USA ("Siemens") interested to buy certain equipment (the "Siemens equipment") owned by Excel. *Id.* ¶¶ 35-36. There were numerous telephone conversations initiated by Doyle to Finn at the Houston Office relating to the Siemens equipment. Doyle represented to Excel in Houston that Siemens was willing to pay $375,000.00 for the Siemens equipment. *Id.* ¶ 37.

---

[9] Doyle forwarded Finn an email advising Finn of his meeting with Henry Johnson and later discussed possible investment opportunities with Freese Johnson (See Exhibit H attached to Finn Decl.-Exhibit 1)

[10] Doyle told Finn that the MRI system was located at Doyle's customer location and if Excel wanted to inspect it, that Doyle would have to be involved to "facilitate" such inspection (See Exhibit I attached to Finn Decl.-Exhibit 1).

[11] 2008 Siemens Biograph 6 Truepoint with cardiac coach

[12] Doyle also wanted Excel to buy the "paper" allegedly owned by the Texas Finance Group on the 2008 Siemens Coach and Doyle was willing to pay on it monthly, plus interest and if Doyle was able to rent it, he was willing to split the net rental fee 50/50. Doyle stated, "If we decide to sell it, I will split the proceeds 50/50"

4

Finn and Doyle agreed in principal that Excel was willing to sell the Siemens equipment to Doyle and Medical Exporters for $363,000.000 conditioned on Doyle and Medical Exporters delivering these funds to the Houston Office. Doyle agreed. *Id.* ¶ 38.

However, unknown to Excel, Doyle and Medical Exporters were in a severe financial crisis with a cash flow problem that Doyle and Medical Exporters did not disclose to Excel. *Id.* ¶ 61. These financial problems were in sharp contrast to the representations given by Doyle to Finn.

Doyle and Medical Exporters had represented to Finn that Doyle and Medical Exporters would immediately pay $363,000.000 in full to Excel at the WPEF's Bank of America in Houston Texas immediately upon receipt of the payment by Siemens. Doyle and Medical Exporters had also represented to Finn that Doyle and Medical Exporters had the financial wherewithal, backing and assets to financially honor their oral and written agreements with Excel; had a credit line with the Texas Finance Group, and had sufficient assets and financial ability to pay the $363,000.000. *Id.* ¶ 44.

This was one of the largest medical diagnostic equipment deal that Doyle and Medical Exporters proposed to Excel. *Id.* ¶ 42 Doyle and Medical Exporters provided Excel with copies of the February 9, 2015 agreements between Siemens and Doyle and Medical Exporters.[13] *Id.* ¶¶ 39-40.

Doyle told Excel that Siemens insisted that prior to paying for the Siemens equipment, that the Siemens equipment needed to be delivered, tested and that payment would come shortly thereafter. Relying on the representations and promises made and their long relationship, Excel released the Siemens equipment to Doyle and Medical Exporters. This was prior to Excel being paid for the Siemens Equipment. *Id.* ¶¶ 41,43-44. The "gatekeeper" of the Siemens equipment was Finn, who was located in Houston Texas. Finn released the Siemens equipment to Doyle and Medical Exporters based on their misrepresentations and failures to disclose information.

---

[13] February 9, 2015, Doyle and Medical Exporters entered into three written agreements with Siemens, whereby Siemens agreed to pay $375,000.00 in total.

5

Doyle signed the Equipment Purchase Agreements and returned them to Excel in Texas.[14] *Id.* ¶ 45, 47. The Siemens equipment was delivered and Siemens paid Defendants $375,000.00. However, Doyle and Medical Exporters failed to pay the $363,000.000 to Excel immediately after receiving the $375,000.00. Instead, on April 3, 2015, Defendants only wired $150,000.00 to WPEF's Bank of America in Houston, Texas. On April 28, 2015, Defendants only paid another $25,000.00. *Id.* ¶ 48-57.

On June 28, 2015, in an email to Larry Smith, Doyle admitted owing the money. Doyle confessed, "I owe you $50,000.00 for one system and $150,000.00 for another less $12,000.00 profit for a total of $188,000.00. I have receivables of $2,375,000 which is a major reason why I am in the predicament I am in." See Exhibit. 2: Declaration of Larry Smith ("Smith Decl."). A true and correct copy of the June 28, 2015 email from Doyle to Larry Smith is attached to the Smith Decl. marked Exhibit "A". Doyle and Medical Exports have not paid the $188,000.00. Finn Decl. ¶ 57.

Upon information and belief, Doyle and Medical Exporters intended to use the money received from Siemens for their own purposes and not to pay Excel as represented. Excel would not have given Defendants the Siemens equipment but for Defendants' representations. Finn Decl. ¶ 61.

On January 5, 2016, Doyle and Medical Exporters executed a letter agreement agreeing to pay the balance of $188,000.00 in monthly installment payments to Excel's Houston attorney Jim West. The place of performance for the payments was Houston Texas.[15] See Exhibit. 3: Declaration of Jim West ("West Decl.") A true and correct copy of the January 5, 2016 agreement between Doyle and Medical Exporters and Jim West is attached to the West Decl. marked Exhibit "A".

## III. ARGUMENT AND AUTHORITY

### A. Court has Jurisdiction over Defendants

---

[14] Excel prepared three "Equipment Purchase Agreements" and forwarded them to Doyle for signature. True and correct copies of the Equipment Purchase Agreements relating to the Siemens equipment are attached to the Declaration of Finn (Exhibit "1") marked Exhibits "B", "C" and "D".

[15] In the January 5, 2016 letter agreement, Doyle and Medical Exporters agreed to pay the balance of $188,000.00 in monthly payments of $10,000.00 beginning January 30, 2016. Doyle and Medical Exporters agreed to pay by check or money order payable to West Law Group, PLLC and mail it to West Law Group, PLLC's Houston Texas address, or alternatively to wire payment to the firm trust account in Houston.

6

1. **Standard of Law**

Because the Texas long-arm statute extends to the limits of due process, this two-prong framework collapses into a single inquiry into whether subjecting [the non-resident defendant] to suit in Texas is consistent with the Due Process Clause of the Fourteenth Amendment. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219, 220 (5th Cir. 2012) citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The Due Process Clause . . . sets the outer boundaries of a [court's] authority to proceed against a defendant and protects a nonresident defendant against suit in a forum with which it has established no meaningful "contacts, ties, or relations. *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). See also *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

To determine whether due process permits the exercise of personal jurisdiction, it must be determined first, whether the nonresident defendant must have "purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Eddy v. Printers House (P) Ltd.*, 627 F. App'x 323, 325 (5th Cir. 2015) (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). Second, "the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting *Mink*, 190 F.3d at 336). See also *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir., 2016) citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L. Ed. 95 (1945.

The plaintiff has the burden of establishing that the court has personal jurisdiction. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193,211 (5th Cir., 2016). "When, as here, the district court does not search beyond the pleadings, "that burden requires only that the [plaintiff] make a prima facie showing." Id.

"When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff[s] may bear [their] burden by presenting a prima facie case that personal jurisdiction is proper.'" Id. (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)).

The court must accept as true the uncontroverted allegations in the plaintiffs' complaint and must resolve any factual conflicts in favor of the plaintiffs. *Guidry v. U.S. Tobacco Co., Inc.* 188 F.3d 619, 628 (5th Cir. 1999). "We must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir., 2016) citing *Monkton Ins. Servs. Ltd. v. Ritter,* 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov,* 317 F.3vd 467, 469 (5th Cir.2002).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). See also *Panda Brandywine Corp. v. Potomac Electric Power Co*., 253 F.3d 865, 869, 867-68 (5th Cir. 2001).

### 2. Finn has met burden establishing Court's Personal Jurisdiction over Defendants.

The Plaintiff's First Amended Complaint (Dkt. #7) and Exhibits 1, 2 and 3 to this Response provide facts establishing this Court's personal jurisdiction over Defendants. Doyle's Declaration does not dispute his attendance at the March 2014 meeting in Houston, Texas.[16] Doyle fails to mention the numerous other business activities of Defendants in the State of Texas. Doyle's Declaration never denies that Doyle and Medical Exporters conducted "business" in Texas because Doyle's Declaration ¶24 selectively uses the term "business operations" instead of "business". Doyle's Declaration ¶27

---

[16] Patrick Doyle and Medical Exporters originally filed a Defendant's Motion to Dismiss in or about January 13, 2017 and attached thereto, was a Declaration of Patrick Doyle (hereinafter referred to as "Doyle's Original Declaration"). Doyle's Original Declaration is marked Exhibit "F" and is attached to Finn's Declaration (Exhibit "1"). In Doyle's Original Declaration, Doyle omitted any reference to the March 2014 Meeting. See Doyle Original Declaration ¶16. It was not until after Finn responded to the Motion to Dismiss that Doyle now "admits" attending the meeting.

does not mention Medical Exporters. Doyle's Declaration statements are insufficient proof and in numerous instances, the Finn contradicts the Doyle declaration. Finn Decl. ¶¶ 1-79.

### a. Defendants have Minimum Contacts with Texas and Subject to Jurisdiction of Texas Court.

#### 1. General Jurisdiction

In the context of general jurisdiction, "Where [an individual] defendant 'has continuous and systematic general business contracts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the defendant [regardless of whether the action is related to the forum contacts].'" *Evergreen Media Holdings, LLC v. Safran Co*., 68 F. Supp. 3d 664 (S.D. Tex., 2014) (citing *Luv N' Care, Ltd. v. Insta–Mix, Inc*., 438 F.3d 465, 469 (5th Cir.) citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). See also *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 717 (5th Cir.1999) ("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."), cert. denied, 531 U.S. 917, 121 S.Ct. 275, 292, 148 L.Ed.2d 200 (2000). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), cert. denied, 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).

Doyle and Medical Exporters each have had substantial contacts with Texas residents and such contacts with Texas have been continuous and systematic and not infrequent or sporadic. See Finn Decl., ¶¶ 11-35, 37-61;71-78; See also West Decl., ¶¶ 1-6 and the January 5, 2016 letter agreement attached as Exhibit A to West Decl. In cannot be said that Doyle and Medical Exporters' interactions with Texas customers is mere happenstance.

#### 2. Specific Jurisdiction

9

The court may assert specific personal jurisdiction over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir., 2016) citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Daimler AG v. Bauman,* 571 U.S. ___ (2014), 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014).

A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014).(citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

Specific jurisdiction exists when the defendant lacks substantial, continuous, and systematic contacts with the forum state but instead has some minimum contacts that establish (1) the defendant has "purposefully directed [its] activities at residents of the forum," and (2) the plaintiffs' alleged injuries "arise out of or relate" to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S. Ct. 2174, at 2182 85 L.Ed.2d 528 (1985)).

Specific jurisdiction exists where a "defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 105 S. Ct. at 2183. See also *Michiana Easy Livin' Country, Inc. v. Hoiten*, 168 S.W.3d 777, 784 (Tex. 2005) (recognizing "purposeful availment" as the "touchstone of jurisdictional due process"); See *Rushmore Investment Advisors, Inc. v. Frey*, 231 S.W.3d 524, 527 (5th Cir. 2007).

It is well settled that a single act directed toward a forum state that gives rise to a cause of action can support a finding of minimum contacts as long as Defendant reasonably anticipates being haled into a court in the forum state. *ICEE Distributors Inc. V. J&J Snack Foods Corp*., 325 F.3d 586, 591 (5th Cir. 2003) (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir.

10

2000)). In addition, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 1956 F.3d 208, 213 (5th Cir. 1999).

For example, if a defendant makes false statements during a phone call to the forum, the purposeful availment inquiry is satisfied. See *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001). The Fifth Circuit reversed the district court's dismissal for lack of personal jurisdiction finding that the defendant purposefully availed himself to the forum state. Id. at 359. The Fifth circuit reasoned that the 'actual content' of the communications between Rosenfeld and the plaintiff showed a purposeful availment of the benefits and protections of the forum state since it gave rise to an intentional tort. Id. (quoting *Wien Air Alaska, Inc. v. Brandt*, 1956 F.3d 208, 213 (5th Cir. 1999).

*Walk Haydel & Associates v. Coastal Power Prod.*, 517 F.3d 235 (5th. Cir., 2008), found a factual scenario analogous to *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141 (3rd Cir. 1992)) cert. denied, 506 U.S. 817 (1992) (citations omitted). The Court noted that, in Carteret, the Court found that the attorney in Carteret failed to disclose a conflict of interest while in the forum state, giving rise to the cause of action for fraudulent misrepresentation and breach of fiduciary duty. Most of the relevant activity, including preparation of the closing documents, occurred in the non-forum state. But the court found personal jurisdiction appropriate because the conduct that did occur in the forum state—i.e., the failure of the attorney to disclose his prior and continued representation of another participant in the project—gave rise to the cause of action.

- *Tort Claims*

When a nonresident defendant commits a tort within this state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of action

11

arising from its offenses or quasi offenses. *Guidry v. U.S. Tobacco Co., Inc.* 188 F.3d 619, 628 (5th Cir. 1999). However, "foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 1956 F.3d 208, 212 (5th Cir. 1999).

In this case, Defendants actions were specifically directed towards Texas. Plaintiff's First Amended Complaint contains claims against Doyle and Medical Exporters for breach of fiduciary duty, fraud, fraud by nondisclosure and fraudulent inducement. See Plaintiff's First Amended Complaint (Dkt. #7) ¶¶ 22-75, 95-112. The relationship creates a duty to disclose. See Finn Decl., ¶¶ 14-61.

The tort claims arise from Doyle's representations and failures to disclose occurring while Doyle was present in Houston for the March 2014 meeting at the Houston Offices, the representations Doyle conveyed to Finn in the December 28, 2014 email and the numerous calls from Doyle to Finn between March 2014 through April 2015. See Finn Decl., ¶¶ 11-35, 37-61. Doyle's meetings in Texas, email and calls to Texas constituted tortious conduct to defraud Excel in Texas which successfully resulted in Excel releasing the Siemens equipment to Doyle and Medical Exporters.

Doyle and Medical Exporters misrepresented their financial condition and abilities. Finn Decl., ¶¶ 27-29, 33-34. Doyle and Medical Exporters were in financial trouble and were in a cash flow bind when they took the Siemens equipment from Excel, sold the Siemens equipment to Siemens and kept the money all without an intention to pay Excel.[17] Smith Decl. ¶1 and Exhibit A.

There is evidence that it was always Doyle's intention to defraud Excel. In Doyle's email dated June 28, 2015, Doyle confessed that he was "in over his head over the past year after I had a piece of equipment stolen by someone I trusted. It put me $120,000.00 in the hole…". Smith Decl. Exhibit "A". Doyle and Medical Exporters never had the intention to immediately pay $363,000.000 in full to Excel at the WPEF Bank of America account in Houston Texas upon receipt of the payment by

---

[17] In an email dated June 28, 2015, Doyle confessed that he was "in over his head over the past year after I had a piece of equipment stolen by someone I trusted. It put me $120,000.00 in the hole…".

12

Siemens because he was "in the hole" in other business dealings. See Plaintiff's First Amended Complaint ¶¶ 65, 94, 105.

Our case is factually distinguishable from *Invesco v. McGowan* No. 6:10-CV-624, 2011 U.S. Dist. LEXIS 116467 (E.D. Tex. Sept. 8, 2011) as Excel and Defendants had a substantial history over years and a relationship of trust existed that arose to Defendants owing Excel a fiduciary duty. There were also substantial misrepresentations made over the course of a year.

- ***Breach of contract***

Doyle assert that his sole contact with Texas exists only by virtue of Excel's attempt to enforce Doyle's company agreements with an Oklahoma company. This is not a case of limited contacts. See Finn Decl., ¶¶ 11-35, 37-61;71-79. Defendants established a long relationship with Excel since May 2012 and their business deals generated more than half of Doyle and Medical Exporter's business revenues. *Id.* ¶ 19. It is clear from Exhibits 1, 2 and 3 attached to this Response, that Doyle and Medical Exporters conducted business in Texas and physically was active in Texas.

Plaintiff's First Amended Complaint contains claims against Doyle and Medical Exporters for breach of contract, promissory estoppel, quantum meruit/unjust enrichment. See Plaintiff's First Amended Complaint (Dkt. #7) ¶¶ 22-75, 76-88. There were oral agreements that the place of performance was in Houston Texas that are independent agreements from the Equipment Purchase Agreements.[18] *Id.* ¶ 44. The Equipment Purchase Agreements were executed based, in part, on the representations made to Excel at the Houston Office relating to the financial ability of Defendants.

Defendants also breached their agreement to make installment payments to Jim West where the place of performance was in Houston Texas. Both Doyle and Medical Exporters signed the January 5, 2016 letter agreement, each agreeing to be liable for the full amount. See West Decl. Exhibit "A".

---

[18] The Equipment Purchase Agreements do not specifically bar Doyle and Finn's oral agreement that all payments were to be made in Houston Texas.

13

**b.** **Court's exercise of Jurisdiction over Defendants would be Fair and Reasonable**

If the plaintiff successfully shows that the Defendants contesting personal jurisdiction have minimum contacts with Texas that relate to Plaintiff's claims, the burden then shifts to the Defendants to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros Atuneros, Inc.* 472 F.3d 266 271 (5th Cir. 2006). *McFadin v. Gerber*, 587 F.3d 753, 759-60 (5th Cir. 2009) (quoting *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

In considering whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice," the court examines (1) the burden on the nonresident defendants contesting jurisdiction; (2) Texas' interests; (3) the plaintiff's interest in obtaining convenient, effective relief; (4) the judiciary's interest in efficiently resolving controversies; and (5) Texas's interest in furthering important social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) 100 S. Ct. 559, 567 (1980).

Doyle admits owing the $188,000.00. See Smith Decl. ¶1 and Exhibit "A" (June 28, 2015 email from Doyle to Larry Smith). Exercising jurisdiction would not offend traditional notions of fair play and substantial justice from Excel's interest to obtain convenient effective relief in this Texas forum. It would be inconvenient and ineffective to dismiss this lawsuit because of the substantial costs to refile, travel and hire local counsel. All of the parties necessary to efficiently resolve this controversy are before the Court and a dismissal would not be judicially efficient and would be contrary to the judiciary's interest in efficiently resolving controversies. Defendants have local counsel here who are familiar with the case. Texas has an interest in providing a forum to resolve matters involving torts committed toward its residents or within the State of Texas. In this case, Finn is a Texas resident who has the rights to assert these claims pursuant to a full assignment.

**3.** **If Court does not have personal jurisdiction, Court should transfer to Tennessee instead of dismiss.**

14

In the event the Court finds no personal jurisdiction over Defendants, Excel requests that the Court not dismiss the case and instead transfer the case to the Eastern District of Tennessee.

There is a statute of limitations for fraud that may preclude Excel from refiling.[19] Under Oklahoma Statutes, Title 12. §95(3) the statute of limitations is only 2 years for fraud claims. Fraud has been asserted by Excel in this case and Excel's fraud claims could be barred if a Court applies Oklahoma law to these claims. Excel probably would not have time to refile in the event this claim and/or the case were dismissed. The court should transfer if dismissal would result in a statute of limitation barring the Plaintiff from refiling its claim. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). *Daniel v. American Bd. Of Emerg. Med*, 428 F.3d 408, 435 (2nd Cir. 2005).

Upon a finding that it lacks personal jurisdiction, a district court can correctly cite 28 U.S.C. §1406(a) for the authority to transfer a case if it is in the interest of justice. Id. "The language of §1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). See *Herman v. Cataphora, Inc.* 730 F.3d 460,466 (5th. Cir., 2013). Courts "generally prefer transfer to dismissal." *Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3-15-cv-3797, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016).

**B.    Venue is Proper in this District**

**1.    Standard of Law**

Defendants' Motion to Dismiss or Transfer Venue sufficiently states the applicable law regarding Venue under 28 U.S.C. 1391(b). The suit can be brought in a district where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. 1391(b)(2). To determine whether a "substantial" part of the claim's activities occurred in a particular venue, the court may

---

[19] Defendants contend that the Equipment Purchase Agreements are subject to Oklahoma law.

15

look to the entire sequence of events underlying the claim, not just a single triggering event prompting the action. See *Uffner v. LaReunion Francaise*, S.A 244 F.3d 38, 42-43 (1st Cir. 2001). In making its determination, the court does not ask which district among potential forums is the "best" venue. *Bates v. C&S Adjusters, Inc.* 980 F.2d 865, 867 (2nd Cir. 1992).

Instead, the court asks whether the district the Plaintiff chose had a substantial connection to the claim, regardless of whether other districts had greater connections. *Pecoraro v. Sky Ranch for Boys, Inc*. 340 F3d 558, 563 (8th Cir. 2003). Finn has met Burden of Proof Establishing Venue Properly in this District.

After this Motion to Transfer Venue was filed, Excel filed Plaintiff's First Amended Complaint which is incorporated herein by reference. See First Amended Complaint (Dkt.#7).

In making this decision, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco*, *Inc*. *v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 F. App'x 612, 615 (5th Cir. 2007)

Plaintiff's First Amended Complaint, venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District. See Plaintiff's First Amended Complaint claims against Doyle and Medical Exporters for breach of fiduciary duty, fraud, fraud by nondisclosure and fraudulent inducement. See Plaintiff's First Amended Complaint ¶¶ 4-6, 22-75, 95-112.

The tort claims arise from Doyle's representations and failures to disclose occurring while Doyle was present in Houston for the March 2014 meeting at the Houston Offices, the representations Doyle

16

conveyed to Finn in the December 28, 2014 email and the numerous calls from Doyle to Finn between March 2014 through April 2015. See Finn Decl., ¶¶ 11-35, 37-61.

Doyle and Medical Exporters misrepresented their financial condition and abilities. Finn Decl., ¶¶ 27-29, 33-34. Doyle and Medical Exporters were in financial trouble and were in a cash flow bind when they took the Siemens equipment and later the money from Siemens all without an intention to pay Excel.[20] See Smith Decl. ¶1 and Exhibit A (June 28, 2015 email).

Defendants never had the intention to immediately pay $363,000.000 in full to Excel at the WPEF Bank of America account in Houston Texas upon receipt of the payment by Siemens.

The "gatekeeper" of the Siemens equipment was Finn, whose ears were located in Houston Texas. Excel would not have allowed Defendants to the Siemens equipment but for Defendants misrepresentations and failure to disclose their financial condition and their scheme. Finn Decl., ¶ 61.

At all times, the place of performance for the delivery of payment was Houston Texas. See Plaintiff's First Amended Complaint ¶¶ 5. As it relates to the breach of contract claims, at no time were any of the Equipment Purchase Agreements negotiated or executed by the parties in Oklahoma. Finn Decl., ¶¶ 64-65. At no time was the place of performance in Tennessee. Finn Decl., ¶¶ 71d.

### 2. If Court finds Venue improper, Court should not Dismiss and should Transfer.

In the event the Court finds venue is improper, it should transfer to the Eastern District of Tennessee and not dismiss in the interest of justice due to possible statute of limitations that could preclude Excel from refiling.[21]

The Court in *Moran v. Smith* No. 5:15-CV-1121-DAE (W.D. Tex., 2016) held that in the interest of justice, the established preference of courts is to deny dismissal of a case based on the

_____

[20] In an email dated June 28, 2015, Doyle confessed that he was "in over his head over the past year after I had a piece of equipment stolen by someone I trusted. It put me $120,000.00 in the hole…".

[21] See Plaintiff's Response to Motion to Dismiss, infra. Under Oklahoma Statutes, Title 12. §95(3) the statute of limitations is only 2 years for fraud claims. Fraud has been asserted by Excel in this case and Excel's fraud claims could be barred if Oklahoma law applies to this claim. Excel does not believe it would have time to refile in the event this claim and/or the case were dismissed.

17

procedural technicality of an improper venue. In *Moran*, the Court cited that, "the Supreme Court has explained that "Congress . . . recognized that 'the interest of justice' may require that the plaintiff not be penalized by . . . 'time consuming and justice-defeating technicalities.'" *Goldlawr, Inc. v. Heiman*, 369 U.S. 463,466 (1962) (court may transfer case even where it lacks personal jurisdiction).

**C.     Case should not be Transferred under Defendants Motion to Transfer Venue**

Section 1404 allows district courts to transfer an action to another venue "where it might have been brought" "for the convenience of parties and witnesses" if such a transfer will be "in the interest of justice." 28 U.S.C. §1404(a). The preliminary question under §1404(a) is thus whether a civil action might have been brought in the proposed venue. Whether a venue is proper is determined under 28 U.S.C. §1391 when no special, restrictive venue statute applies.

Defendants' Motion to Dismiss or Transfer Venue sufficiently states the applicable law regarding federal law regarding Venue under 28 U.S.C. §1404(a). However, Excel disagrees with Defendants conclusions.

**1.     Private and Public Interest Factors**

If venue in the proposed district would have been proper, the court must then determine "whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The Fifth Circuit has observed that because a plaintiff's choice of forum should bear some weight in a transfer analysis, the movant must show "good cause" in order to obtain a transfer. *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc*., 321 F.2d 53, 56 (5th Cir. 1963). To show "good cause" the movant must show that the desired venue is "clearly more convenient" than the venue chosen by the plaintiff.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious,

and inexpensive. Id. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws and of the application of foreign law. *J.D. Fields & Co. v. Nucor-Yamato Steel Co.,* No. H-12-1918 (S.D. 2012) (citing *In re Volkswagen*, 545 F.3d at 315).

The **private factors** do not favor a transfer to the Eastern District of Tennessee.

- The relative ease of access to sources of proof does not favor transfer. Finn is a key witness and cannot easily travel to Tennessee to litigate while running his business. Finn Decl., Finn Decl., ¶ 63. Moreover, witnesses for Finn and Doyle are located in Texas and no witnesses in Ohio. Finn Decl., ¶ 67. The Texas Finance Group is located in Texas. Larry Smith may have talked to Doyle and/or Medical Exporters on the phone or may have received emails. See Finn Decl., ¶ 66.

- Excel believes that there could be non-willing witnesses located in Texas such as the Texas Finance Group. See Finn Decl., ¶ 68. They would be outside the compulsory process range of any court in Tennessee. Therefore, the availability of compulsory process to secure the attendance of witnesses does not favor transfer.

- The cost of attendance for willing witnesses is unfavorable. There are no direct flights from Houston to Knoxville on Southwest Airlines and the costs to fly United are exorbitant and inconvenient. See Finn Decl., ¶ 70.

- The litigation will not be easier, more expeditious and less expensive in this District as it is where the events at issue took place. Not Tennessee. Excel is not alleging that the events took place in Tennessee.

The **public factors** do not favor a transfer to the Eastern District of Tennessee.

19

- The location of the alleged wrong is Texas. The wrong was the failure to make payment to Excel at Houston, Texas and all of the representations that were made to Texas that induced Excel. Negotiations were held on the phone with Finn in Houston Texas.

- The Tennessee court is unfamiliar with the local laws of the State of Texas.

## IV. CONCLUSION

Excel respectfully requests that Defendants' Motion to Dismiss or Transfer Venue ("Defendants' Motions") be denied in their entirety. Excel requests that the Court postpone ruling on Defendants' Motions to allow Excel to conduct discovery of jurisdictional facts to enable Excel to fully respond to Defendants' Motions.

Excel alternatively requests that in the event the Court is inclined to grant Defendants' Motion to Dismiss or Defendants' Motion to Dismiss for Venue reasons, that the Court, instead transfer this Case in the interest of justice to the Eastern District of Tennessee.

Dated: March 24, 2017                          Respectfully submitted,


                                               /s/ *Jeffrey Hunter Karchmer*
                                               Jeffrey Hunter Karchmer
                                               State Bar No. 11097710
                                               Federal Bar No. 13632
                                               3518 Travis, Suite 200
                                               Houston, Texas 77002
                                               (713) 850-8888
                                               Fax: (832) 900-9535
                                               jeff@karchmerlaw.com

                                               Attorney in Charge for *Plaintiff Finn*
                                               *as the assignee of Excel Imaging Services, L.L.C*

### CERTIFICATE OF SERVICE

On March 24, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the CM/ECF electronic filing system. I hereby certify that I have served counsel of record electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.

                                               ____/s/ Jeffrey H. Karchmer____
                                               Jeffrey H. Karchmer