IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

**SEAN FINN**, as the assignee of **EXCEL** §
**IMAGING SERVICES, LLC**, §
§
*Plaintiff/Counter-Defendant*, §
§
v. §  Case No. 3:17-CV-00399-TAV-HBG
§
**PATRICK DOYLE**, individually and d/b/a §
**MEDICAL EXPORTERS** and **MEDICAL** §
**EXPORTERS, LLC**, §
§
*Defendants/Counter- &* §
*Third Party Plaintiff*, §
§
v. §
§
**EXCEL IMAGING SERVICES, LLC**, §
**WPEF, INC.**, and **SHANNON FINN**, §
§
*Cross & Third-Party Defendants*. §

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

In his First Amended Complaint, Plaintiff/Counter-Defendant Sean Finn, as the alleged assignee of Excel Imaging Services, LLC ("Excel"), ignores the strict limitations on liability provided by the sales contracts giving rise to this dispute—contracts drafted by Excel—to allege a variety of non-cognizable tort and equitable claims. He further seeks to hold Defendant Patrick Doyle individually liable for his alleged harms based on insufficient and purely conclusory assertions of fraud. Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Patrick Doyle, individually and d/b/a Medical Exporters ("Doyle") and Medical Exporters, LLC (collectively, "Medical Exporters"), seek dismissal of all claims disallowed under the Excel sales contracts and all claims against Mr. Doyle.

# I.    FACTUAL BACKGROUND

Despite his verbosity, the facts and issues in dispute in this case are quite narrow.[1]

## A.    The Medical Exporters/Excel Equipment Purchase Agreements.

Defendant Medical Exporters, LLC, is a Tennessee corporation owed and operated by Defendant Patrick Doyle.  (*See* 1st Am. Compl. (Dkt. # 7), ¶¶ 3, 17.)  Plaintiff alleges that in 2011, he and two colleagues formed Excel Imaging Services, LLC ("Excel"), in Oklahoma.  Like Medical Exporters, Excel was in the business of buying and selling medical diagnostic equipment.  (*See id.* ¶¶ 24, 27.)

In January 2015, after conducting together and without incident an alleged 50+ prior deals worth a total of $1,500,000–$7,500,000, Medical Exporters allegedly contacted Excel in Texas to broker the sale of three pieces of medical equipment owed by Excel (the "Siemens equipment").  (*Id.* ¶¶ 30, 33, 51.)  Apparently because it involved the sale of three pieces of equipment at once, this "was one of the largest medical diagnostic deal [*sic*]" that Medical Exporters and Excel consummated.  (*Id.* ¶ 58.)  However, as each piece of equipment to be sold was within the ordinary $30,000–$150,000 price range for Medical Exporters/Excel deals, the transaction was otherwise unremarkable.  (*Id.* ¶ 33; Exh. 2 (Dkt. # 7-2), at 1 ($145,000); Exh. 3 (Dkt. # 7-3), at 1 ($145,000); Exh. 4 (Dkt. # 7-4), at 1 ($73,000).)  Medical Exporters and Excel purportedly agreed that Excel would sell the equipment to Medical Exporters for $363,000; Medical Exporters would then sell

---

[1] Plaintiff originally filed suit in a Texas state court in Houston, Texas.  (*See* Notice of Removal, Original Petition (Dkt. # 1-1).)  Defendants timely removed the case to federal court and sought dismissal or transfer of the action due to the Texas court's lack of personal jurisdiction over them.  (*See* Motion to Dismiss or Transfer Venue (Dkt. # 5).)  In an effort to defeat Defendants' motion, Plaintiff filed a First Amended Complaint that includes pages of allegations that attempted to connect Defendants to Texas but had no connection to the contract claims giving rise to Plaintiff's suit.  (*See* 1st Am. Compl. (Dkt. # 7).)  Defendants' second Motion to Dismiss or Transfer Venue was granted by the Texas court, which transferred the case to this District.  (*See* Order (Dkt. # 29).)

the equipment to its buyer for $375,000. (*Id.* ¶¶ 53–54.) Upon receipt of the $375,000 from its

buyer, Medical Exporters was to tender $363,000 to Excel via a Texas bank account. (*Id.* ¶ 56.)

The Excel sales to Medical Exporters were governed by three identical "Equipment

Purchase Agreements" (the "Agreements"), between Medical Exporters (not Mr. Doyle) and

Excel.[2] (*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 1; Exh. 3: Equip. Purchase Agree.

(Dkt. # 7-3), at 1; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 1.) Defendants do not deny the

existence or validity of the contracts. (*See* Answer (Dkt. # 44), ¶ 62.) The Agreements, which are

appended to and incorporated into Plaintiff's First Amended Petition, were prepared by Excel and

subject to Excel's "Standard Equipment Terms and Conditions." (1st Am. Compl. (Dkt. # 7),

¶ 62.) Each of the Agreements provides, in relevant part:

> **Limitations on Liability**
> Notwithstanding any other provision of this Agreement to the contrary, neither party will be liable for any failure or delay in delivery or accepting delivery of the Equipment due to a cause beyond such party's reasonable control, provided that such party notifies the other, as soon as practicable under the circumstances, of the exact cause or failure of such delay, the actions being taken to remedy such cause and the date on which such remedy is expected to be completed. Buyer's inability to pay the Purchase Price as and when due shall not be deemed to be beyond Buyer's "reasonable control". Neither party will be liable for special, consequential or incidental damages even if that party has been informed that such damages are possible.
>
> This is a commercial sales transaction. Any claim related to this contract will be covered solely by commercial legal principles. **Seller, Seller's representatives and Buyer will have no tort or other liability to the other arising out of this contract.**

(*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 4 (emphasis added); Exh. 3: Equip. Purchase

Agree. (Dkt. # 7-3), at 4 (emphasis added); Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 4

---

[2] In fact, the agreements expressly note that "Seller accepts Buyer's offer [to purchase the equipment subject to each sales contract] by the signature of a company officer or owner." (*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 2; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 2; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 2.)

3

(emphasis added).)

The Agreements contain a broad merger clause and state:

> This agreement constitutes the complete agreement of the parties relating to Excel Imaging Services, LLC delivery of the products and/or services identified and supersede all prior and oral or written proposals, statements, agreements, commitments, or understandings with the respect to the matters provided herein.
>
> \*　　　　\*　　　　\*　　　　\*
>
> No prior proposals, statements, course of dealing or usage of the trade will be part of the contract.

(*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 2; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 2; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 2.)

The Agreements "may be modified only in writing, signed by Seller and Buyer. (*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 2; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 2; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 2.) The Agreements are "governed by the laws of Oklahoma." (*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 4; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 4; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 4.)

According to Plaintiff, Medical Exporters paid Excel only $175,000 of the $363,000 purchase price for the Siemens equipment. (*Id.* ¶¶ 69–70.) This suit followed.

## B. Plaintiff's Claims for Relief.

In its First Amended Petition, Plaintiff asserts seven causes of action: breach of contract and four tort claims, a declaratory judgment claim, and a request for a constructive trust. Each claim seeks the $188,000 allegedly owed to Excel under the Equipment Purchase Agreements. (*Id.* ¶ 77 (asserting a claim for breach of contract and seeking the "full amount due" under the Equipment Purchase Agreements); ¶ 81 (asserting a claim for promissory estoppel and seeking enforcement of Medical Exporters' alleged promise to pay all sums owed under the Equipment Purchase Agreements); ¶ 87 (asserting a claim for unjust enrichment/*quantum meruit* and seeking

4

payment for the equipment sold under the Equipment Purchase Agreements); ¶ 90 (seeking a declaratory judgment that Medical Exporters is liable to Excel under the Equipment Purchase Agreements); ¶ 94 (asserting a claim for breach of fiduciary duty and seeking recovery for Medical Exporters' alleged failure to pay all sums due under the Equipment Purchase Agreements); ¶¶ 95–112 (alleging various theories of fraud for which Plaintiff seeks recovery of the sums due under the Equipment Purchase Agreements); ¶ 114 (seeking a constructive trust over the balance of the money owed under the Equipment Purchase Agreements).)

Plaintiff brings each claim against Medical Exporters and Mr. Doyle. However, Plaintiff offers no allegations establishing Mr. Doyle's personal liability for any claims against Medical Exporters arising from the Agreements. Instead, Plaintiff offers only that:

(i)     "Medical Exporters operated out of Doyle's home." (*Id.* ¶ 16.)

(ii)    "Doyle is the sole shareholder, salesperson, officer, director, manager and/or employee of Medical Exporters." (*Id.* ¶ 17.)

(iii)   "Between May 2012 and February 2015 . . . [, t]here were occasions when Doyle would wire money from his personal account [to Excel and/or WPEF] and other times Doyle would wire money from Medical Exporter's account" for other deals between Excel/WPEF/Finn and Medical Exporters. (*Id.* ¶ 34.)

Based on these sparse and unremarkable allegations, Plaintiff concludes that "Doyle and/or Medical Exporters diverted assets and/or monies to the detriment of Excel," "Doyle has used Medical Exporters to be used to achieve an inequitable result and Doyle has abused the corporate form to promote fraud or injustice," and "Medical Exporters acts as a conduit to carry on Doyle's personal business (an unfair device to achieve an inequitable result)." (*Id.* ¶¶ 18–20.) Plaintiff states that the "Court should disregard the corporate entity and hold Doyle personally liable for Medical Exporter's obligations or corporate conduct under the legal doctrines of fraud, alter ego and when necessary to protect the rights of third persons and accomplish justice." (*Id.* ¶ 21.)

## II.     STANDARD OF LAW

To motion for judgment on the pleadings under Rule 12(c), "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[A] legal conclusion couched as a factual allegation' need not be accepted as true . . . , nor are recitations of the elements of a cause of action sufficient." *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2000)).

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.     ARGUMENT & AUTHORITIES

**A.**     **Plaintiff's Tort and Equitable Claims are Disallowed under the Agreements and Otherwise Non-Cognizable.**

Although Plaintiff brings seven causes of action, each is based on the same complaint: That "Defendants" purchased equipment from Plaintiff but failed to fully pay for it. Under the Agreements and governing law, Plaintiff is limited to recovery of actual damages for breach of contract. All other claims must be dismissed.

    **1.**     ***The Agreements Preclude Plaintiff's tort claims and request for tort damages.***

Under Oklahoma law, transactions in goods are subject to Oklahoma's Uniform Commercial Code ("UCC"). *See* Okla. Stat. 12A, § 2.102. The Oklahoma UCC provides various statutory standards for the creation, interpretation, and enforcement of sales contracts. *See*

6

*generally* OKLA. STAT. 12A, art. 2.  It also includes provisions regarding available remedies for

breach of UCC-governed sales contracts.  *See generally* OKLA. STAT. 12A, art. 2(7).  However,

these remedy provisions are merely defaults.  Oklahoma law provides that a sales agreement:

> may provide for remedies in addition to or in substitution for those provided in this
> article and may limit or alter the measure of damages recoverable under this article,
> . . . and resort to a remedy as provided is optional unless the remedy is expressly
> agreed to be exclusive, in which case it is the sole remedy.

OKLA. STAT. § 12A, § 2-719(1).  Additionally:

> [c]onsequential damages may be limited or excluded unless the limitation or
> exclusion is unconscionable.  Limitation of consequential damages for injury to the
> person in the case of consumer goods is *prima facie* unconscionable but limitation
> of damages where the loss is commercial is not.

*Id.* § 2-719(3).

Oklahoma courts have applied these provisions to enforce limitation of remedies provisions

in UCC sales contracts.  For example, in *Collins Radio Co. v. Bell*, 623 P.2d 1039 (Okla. Civ. App.

1980), the Oklahoma Court of Appeals found "valid and effective" a clause in a sales contract that

stated:

> IN NO EVENT SHALL [SELLER] HAVE ANY LIABILITY FOR
> CONSEQUENTIAL DAMAGES OR FOR LOSS, DAMAGE, OR EXPENSE
> DIRECTLY OR INDIRECTLY ARISING FROM THE USE OF THE
> PRODUCTS, OR ANY INABILITY TO USE THEM EITHER SEPARATELY
> OR IN COMBINATION WITH OTHER EQUIPMENT OR MATERIALS, OR
> FROM ANY OTHER CAUSE.

*Id.*, at 1048–49.  The court held that nothing in the commercial transaction rendered the provision

"unconscionable" and found that the remaining remedies available to the buyer were sufficient.

*Id.*, at 1051.  Consequential damages were not recoverable.  *Id.*

The same result is compelled here.  The Agreements—drafted by Plaintiff—plainly limits

the liability of and remedies available to the parties to the Agreements.  Plaintiff is not entitled to

<u>any</u> "special, consequential or incidental damages" arising from the sales transactions with

7

Plaintiff. Plaintiff offers no facts to suggest that there is anything unconscionable in the provision included by Plaintiff in its own commercial contract. Any and all claims by Plaintiff for such damages must be dismissed.

Similarly, Plaintiff—in his own sales contracts—made clear his intention that neither party "will have . . . tort or other liability to the other arising out of th[e] contract[s]." Instead, remedies available under the Agreements are limited to actual damages for breach of contract. This provision is unambiguous and unequivocal. Accordingly, Plaintiff's promissory estoppel, *quantum meruit*, declaratory judgment, fiduciary duty, fraud, and constructive trust claims must be dismissed.

**2. Notwithstanding the "limitation of remedies" provision of the Agreements, Plaintiff's non-contract claims are non-cognizable.**

Even if Plaintiff was not contractually barred from seeking tort and equitable recovery from Defendants, his claims otherwise fail.

**a. *Declaratory Judgment***

The federal declaratory judgment statute provides "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights or other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. However, "[w]hile this statute vests the federal courts with power and competence to issue a declaration of rights . . . , the question of whether this power should be exercised in a particular case is vested in the sound discretion of the district court." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1980) (citing *Public Affairs Assocs., Inc. v. Richover*, 369 U.S. 111, 112 (1962)).

Factors to be considered by the court in determining whether to issue declaratory relief include:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand T.W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *see also St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1980) (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

In the case of a claim seeking a declaration that a contract has (or has not) been breached, courts do not hesitate to dismiss declaratory judgment claims as duplicative of the "better or more effective" breach of contract claim. *See Grand T.W.R. Co.*, 746 F.2d at 326 (collecting cases); *see, e.g.*, *Pineda Transp., LLC v. FleetOne Factoring, LLC*, No. 3:18-CV-0089, 2018 U.S. Dist. LEXIS 78215, at *18 (M.D. Tenn. May 9, 2018); *Orleans Int'l, Inc. v. Mistica Foods, LLC*, No. 15-13525, 2016 U.S. Dist. LEXIS 92844 (E.D. Mich. July 2=18, 2016); *World Shipping v. RMTS, LLC*, No. 1:12-CV-3036, 2013 U.S. Dist. LEXIS 25996, at **13–14 (N.D. Ohio Feb. 22, 2013); *see also Steese v. SML Relocation LLC*, No. 5:15-CV-2681, 2017 U.S. Dist. LEXIS 129733, at **6–7 (N.D. Ohio Aug. 15, 2017).

That is the case here. Plaintiff seeks a declaration that Defendants breached the Agreements while also asserting a breach of contract claim under the same Agreements. (1st Am. Compl. (Dkt. # 7), ¶¶ 89–90.) As the declaratory judgment remedy does not provide the money damages Plaintiff seeks under his breach of contract claim, the declaratory judgment claim will not settle the controversy between the parties. Nor will it serve a useful purpose in clarifying the legal relations between the parties. And there is plainly an alternative remedy—the breach of contract claim—which is better and more effective than a declaratory judgment. Accordingly,

9

Plaintiff's declaratory judgment claim should be dismissed.

**b.** *Promissory Estoppel*

Plaintiff alleges that "Defendants" promised that they "would pay Excel for the Siemens equipment in a timely manner (and that the money would not be used for any other purpose" and that Plaintiff "reasonably and substantially relied on these promises . . . to [his] detriment." (*Id.* ¶ 81.) Plaintiff alleges that these promises were made in Texas. (*Id.* ¶¶ 53–54.) He alleges that he relied on these promises in Texas. (*Id.* ¶ 60.) He alleges that his damages were suffered in Texas. (*Id.* ¶¶ 54, 56, 63.).) He seeks recovery for promissory estoppel.

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 536 (6th Cir. 2012); *Walls v. Action Res., Inc.*, No. 1:17-CV-00319, 2018 U.S. Dist. LEXIS 127484, at *3 (E.D. Tenn. July 31, 2018). "For tort claims, Tennessee follows the 'most significant relationship' rule, which provides that 'the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation.'" *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 914 (W.D. Tenn. 2011) (quoting *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). In evaluating which state has the "most significant relationship," Tennessee courts consider:

>  (i)   The needs of the interstate and international systems;
>  (ii)   the relevant policies of the forum;
>  (iii)   the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;
>  (iv)   the protection of justified expectations;
>  (v)   the basic policies underlying the particular field of law;
>  (vi)   certainty, predictability, and uniformity of result; and
>  (vii)   ease in the determination and application of the law to be applied.

*Id.* (citation omitted). "When applying these principles, courts must consider four factors: '(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of

the parties, [and] (d) the place where the relationship, if any, between the parties is centered.'" *Id.* (citation omitted).

Texas law applies to Plaintiff's promissory estoppel claim. Plaintiff alleges that all wrongdoing giving rise to the claim was directed to and occurred in Texas. Plaintiff alleges that his damages were suffered in Texas. Plaintiff represented to the Texas transferor court that Texas law governs his claims. (*See* Response to Mot. to Dismiss (Dkt. # 8), at 20; Response to Mot. to Dismiss 1st Am. Compl. (Dkt. # 13), at 20.)

Under Texas law, "the promissory estoppel doctrine presumes no contract exists." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). Thus, where there is a "promise covered by a valid contract between the parties," there can be no claim for promissory estoppel. *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 825 (Tex. App.—Dallas 2003, pet. denied). The claim is only cognizable to enforce a separate promise outside the contact. *Id.*

Plaintiff's promissory estoppel claim relies on the same "promise" allegedly made by "Defendants" in the Agreements. Defendants do not dispute the existence or validity of the Agreements. Accordingly, Plaintiff fails to plead a claim for promissory estoppel under Texas law and it must be dismissed.

### c.    *Quantum meruit*

Plaintiff similarly alleges that he "provided the Siemens equipment to Defendants," "Defendants accepted the Siemens equipment," and "Defendants had reasonable notice that [Plaintiff] expected to be paid compensation for the Siemens equipment." (1st Am. Compl. (Dkt. # 7), ¶ 86.) Plaintiff alleges that his provision of the equipment to Defendants benefitted them to Plaintiff's detriment and that he is therefore entitled to recovery in *quantum meruit*. (*Id.* ¶ 86.) As with Plaintiff's promissory estoppel claim, Plaintiff alleges that all relevant misconduct and the

effects of such misconduct were directed to and occurred in Texas. (*Id.* ¶¶ 53–54, 56, 60.)

However, regardless whether Plaintiff's *quantum meruit* claim arises under the law of Texas—where Plaintiff claims to have been located at all times relevant—or that of Tennessee—where Defendants were located—the outcome is the same: Because "an existing, enforceable contract cover[s] the subject matter" at issue, Plaintiff's claim is for breach of contract; he is foreclosed from seeking recovery for the same wrongdoing and damages under *quantum meruit*. *See, e.g.*, *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 2005); *Durkin v. MTown Constr., LLC*, __ S.W.3d __, 2018 Tenn. App. LEXIS 128, at **23–24 (Tenn. Ct. App. March 13, 2018) (collecting cases); *Hester v. Friedkin Cos.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (collecting cases); *Raleigh Commons, Inc. v. SWH, LLC*, No. W2011-01298-COA-R3-CV, 2013 Tenn. App. LEXIS 427, at **57–58 (Tenn. Ct. App. June 28, 2013) (collecting cases). Plaintiff's *quantum meruit* claim must be dismissed.

### d.    *Breach of Fiduciary Duty*

Next, Plaintiff alleges that he completed 50+ equipment sales with "Defendants" between 2012 and 2015. (1st Am. Compl. (Dkt. # 7), ¶ 30.) Some of these deals involved "Defendants" purchasing equipment from (allegedly) Plaintiff; others involved Plaintiff tendering money to "Defendants" to purchase equipment from a third party for resale. (*Id.* ¶¶ 37–38.) Plaintiff contends that as a result of these deals, Defendants became fiduciaries of Plaintiff and owed him fiduciary duties which they subsequently breached when they allegedly breached the Agreements. (*Id.* ¶¶ 41, 92.)

As with his promissory estoppel claim, Plaintiff contends that Texas law applies to his fiduciary duty claim. (*See* Response to Mot. to Dismiss (Dkt. # 8), at 20; Response to Mot. to Dismiss 1st Am. Compl. (Dkt. # 13), at 20.) Plaintiff alleges woefully insufficient facts to find a

fiduciary duty on the part of Medical Exporters and Mr. Doyle.

It is well settled in Texas "that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)); *see also Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594, (Tex. 1992), *superseded by statute on other grounds*, *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002)). "'Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court.'" *Id.* (quoting *Nat'l Med. Enters. v. Godbey,* 924 S.W.2d 123, 147 (Tex. 1996)).

"In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law." *Id.*, at 330–31 (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002)). Texas also recognizes "informal fiduciary duties" that arise from "a moral, social, domestic, or purely personal relationship of trust and confidence." *Id.*, at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). "However, 'in order to give full force to contracts, [the courts] do not create such a relationship lightly.'" *Id.* (quoting *Schlumberger Tech. Corp.*, 959 S.W.2d at 177). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* quoting *Associated Indem. Corp.*, 964 S.W.2d at 288).

This "special relationship" giving rise to fiduciary duties cannot arise from the parties' prior history of arms-length business transactions undertaken for their mutual benefit. *Id.*, at 331 (citing *Associated Indem. Corp.*, 964 S.W.2d at 288). Nor does it arise from one party's subjective

trust in the other or the parties' preexisting cordial relationship. *Id.* (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) ("Mere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship); *Crim Truck & Trailer Co.*, 823 S.W.2d at 595 ("The fact that the relationship has been a cordial one, of long duration, [is not] evidence of a confidential relationship.")).

The Texas Supreme Court's decision in *Meyer v. Cathey* is directly on point. The plaintiff in *Meyer* sought recovery for alleged fraud and breach of fiduciary duty by a former business partner. *Id.*, at 329. The parties had been involved in several other projects in the years prior to suit. *Id.*, at 330. In at least one case, the plaintiff had a partnership interest in the parties' transaction and he co-signed a loan to finance that project. *Id.* Despite that, the Texas Supreme Court held that the defendant owed no fiduciary duties to the plaintiff as the parties had merely an ordinary business relationship. *Id.*, at 331. Indeed, the contract giving rise to the parties' dispute expressly "disavowed the creation of any fiduciary duties or other special relationships." *Id.*; *see also Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 61 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Constr. Fin. Servs., Inc. v. Chicago Title Ins. Co.*, No. 04-12-00375-CV, 2013 Tex. App. LEXIS 5339, at **19–23 (Tex. App.—San Antonio May 1, 2013, pet. denied); *Leblanc v. Lange*, 365 S.W.3d 70, 83–85 (Tex. App.—Houston [1st Dist.

The same result is compelled here. Accepting, for purposes of this motion, that all facts alleged by Plaintiff are true, he alleges nothing more than an ordinary business relationship between himself and "Defendants" through which the parties consummated a series of arm's-length transactions for their mutual benefit. Furthermore, the Agreements under which Plaintiff's breach of fiduciary duty claim arises state that "[n]o prior . . . course of dealing . . . will be a part of the contract." (*See* 1st Am. Compl. (Dkt. # 7), at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2),

14

at 2; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 2; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 2.).) Plaintiff has not alleged the existence of a fiduciary duty owed to him by either Medical Exporters or Mr. Doyle. His breach of fiduciary duty claim must be dismissed.[3]

###### e. *Fraud*

Plaintiff next attempts to state a claim against "Defendants" for fraud. However, the allegations he relies upon in support of his fraud claim are illogical; the fraudulent statements on which he relies are not actionable; he alleges no facts establishing fraudulent intent; he identifies no damages outside of those sought by him for breach of contract. Plaintiff's claim spans 3 ½ pages but the key facts are simple and discrete:

Plaintiff alleges that "Defendants" agreed to the written terms of the Agreements and promised to "pay $363,000.000 [*sic*] in full to Excel . . . immediately upon receipt of the payment by Siemens." (1st Am. Compl. (Dkt. # 7), ¶ 97.) Plaintiff alleges that this promise was made "in numerous telephone calls" made prior to execution of the Agreements[4] but does not identify whether the calls were made by Defendant Doyle in his personal capacity or on behalf of Medical Exporters, when exactly the calls were made, or what specifically was said during them. (*Id.* ¶ 98.) Plaintiff further alleges that starting nearly a full year prior to the first discussions between Plaintiff

---

[3] The same result is required under Tennessee law. In Tennessee, "a fiduciary relationship 'arises when one person reposes special trust and confidence in another person and that other person—the fiduciary—undertakes to assume responsibility for the affairs of the other party.'" *Morrison v. Allen*, 338 S.W.3d 417, 437–38 (Tenn. 2011) (quoting *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 641–42 (Tenn. 2008) (Koch, J., concurring)). "[A]bsent extraordinary circumstances, parties dealing at arm's length in a commercial transaction lack the sort of relationship of trust and confidence that gives rise to a fiduciary relationship." *Dick Broad Co., Inc., of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 673 (Tenn. 2013) (Koch, J., concurring). Plaintiff alleges no "extraordinary circumstances" here nor any facts to suggest that any of the "Defendants" undertook to assume responsibility for Plaintiff's affairs.

[4] Plaintiff alleges that "there were calls by Doyle to Finn after Siemens had the Siemens equipment," but he does not allege any fraudulent misrepresentations made during those calls, much less how he relied to his detriment on any representations made at that time. (1st Am. Pet. (Dkt. # 7), ¶ 98.)

and "Defendants" in January 2015 about the Siemens deals, Doyle disclosed that he had access to capital through a "funding group" and "sufficient assets and the financial ability" to pay for the equipment.[5]  (*Id.* ¶¶ 99–100.)  Plaintiff maintains that he was owed some "duty" by "Defendants" due to their "fiduciary" or "special relationship" that obligated Defendants to disclose the "material fact[]" that Defendants  did not intend to fulfill their obligations under the Agreements and did not have access to capital or the ability "to borrow funds sufficient" to pay for the equipment.  (*Id.* ¶¶ 102, 104, 105, 109.)  Plaintiff alleges that he relied on "Defendants'" misstatements to his detriment and seeks unidentified damages.  (*Id.* ¶¶ 111–12.)

Federal Rule of Civil Procedure 9(b) requires that a plaintiff minimally "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation and citations omitted).  A fraud claim must also be evaluated with reference to Federal Rule of Civil Procedure 8, which requires more than "a formulaic recitation of the elements of a cause of action" or "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To recover for common law fraud, Plaintiff must plead and prove: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff act on it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff suffered injury.  *IKON Office Sols., Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.]

---

[5] Again, Plaintiff alleges that "there were calls by Doyle to Finn after Siemens had the Siemens equipment," but he again alleges no fraudulent misrepresentations made during those calls or any detrimental reliance on any statements made at that time.  (1st Am. Pet. (Dkt. # 7), ¶ 100.)

2003, pet. denied) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998)). "A promise to act in the future constitutes fraud only when made with the intention, design and purpose of deceiving—a promise made with no intention of performing the act." *Id.* "[A] party's intent to defraud is determined at the time the party made the representation . . . ." *Id.* Failure to perform a contract, standing alone, is not evidence of the promisor's intent not to perform when the contract was made, but merely a circumstance to be considered with other facts to establish intent. *See, e.g.*, *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 444 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). Partial performance can negate an intent not to keep a promise at the time it was made. *See id.*, at 445.

Plaintiff fails to provide sufficient facts to place Defendants on notice of the fraud claim against them. *First*, Plaintiff fails to disaggregate Defendant Doyle and Defendant Medical Exporters, rending it impossible for either to discern the fraud each is alleged to have committed.

*Second*, the alleged "fraudulent" statements made by "Defendants" that they intended to fulfill the terms of the contract lack any indicia of fraud, particularly given Plaintiff's admission that Medical Exporters did, in fact, pay $175,000 under the Agreements. (1st Am. Compl. (Dkt. # 7), ¶¶ 69–70.) In any event, Plaintiff offers nothing more than that "Defendants" failed to perform under the Agreements, which is insufficient to establish fraudulent intent.

*Third*, the alleged "fraudulent" statements made by "Defendants" that they had access to capital and credit are inconsequential given Plaintiff's admission that Medical Exporters was merely to pass funds on to Plaintiff after they were received from the end purchaser. (*Id.* ¶ 56.) Plaintiff fails to explain how he justifiably relied upon any statement or belief about "Defendants'" credit-worthiness in connection with a deal that required no credit.

But most damaging to Plaintiff's fraud claim is that any reliance by him on alleged

representations by Defendants are negated by the merger provision of the Agreements. In the Agreements, Plaintiff expressly disclaims reliance on "all prior and oral or written proposals, statements, agreements, commitments, or understandings" with respect to the sale of the Siemens equipment. (*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 2; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 2; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 2.) Plaintiff additionally confirms that no party will be liable to the other for any "tort or other liability." (*Id.*, at Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 4; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 4; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 4.) Under Texas law, such "clear and straightforward" disclaimers are enforceable and sufficient to defeat a claim for fraud. *See, e.g.*, *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 570–71 (5th Cir. 2003); *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000); *IKON Offices Sols., Inc.*, 125 S.W.3d at 125–28; *Starlight, L.P./Xarin Austin I, Ltd. v. Xarin Austin I, Ltd.*, No. 03-97-00747-CV, 1999 Tex. App. LEXIS 159 (Tex. App.—Austin Jan. 14, 1999, no pet.); *1900 SJ, Inc. v. Wash. Nat'l Ins. Co.*, No. 01-97-00493-CV, 1998 Tex. App. LEXIS 3059 (Tex. App.—Houston [1st Dist.] May 21, 1998, pet. denied). Plaintiff's fraud claim must be dismissed.

### f. *Constructive Trust*

Finally, Plaintiff seeks imposition of a constructive trust. (1st Am. Compl. (Dkt. # 7), ¶¶ 113–14.) While Plaintiff appears to treat this request as a cause of action, it is, in fact, a remedy. Accordingly, it must be dismissed. *See, e.g.*, *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 755–56 (6th Cir. 2012) (affirming dismissal of "claim" for constructive trust because "there is no stand-alone claim of constructive trust; instead it is a <u>remedy</u> that can only be imposed where there is some ground . . . upon which equity will grant relief." (quoting *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir. 2009))). Plaintiff's "claim" for constructive trust must

be dismissed.

**B.     Plaintiff Pleads no Facts Permitting Recovery against Defendant Doyle.**

Notwithstanding that Plaintiff's tort claims and request for tort and equitable relief must be dismissed, Plaintiff pleads no cognizable claims against Defendant Doyle.  Plaintiff concedes that Medical Exporters—not Doyle—is a party to the Agreements and that Doyle, in his personal capacity, was not otherwise a party to the Siemens transactions.  (*See* 1st Am. Compl. (Dkt. # 7), Exh. 2: Equip. Purchase Agree. (Dkt. # 7-2), at 1; Exh. 3: Equip. Purchase Agree. (Dkt. # 7-3), at 1; Exh. 4: Equip. Purchase Agree. (Dkt. # 7-4), at 1 (identifying "Medical Exporters" as the "Buyer" under the Agreements and Doyle as Medical Exporters' "authorized" signatory).) Plaintiff's sole basis for imposing liability on Doyle is via "Corporate Veil Piercing and Alter Ego."  (*Id.* ¶¶ 15–21.)  However, Plaintiff offers woefully insufficient facts to proceed against Doyle.

Medical Exporters is a limited liability company organized under the laws of Tennessee. (*Id.* ¶ 3.)  "Under Tennessee law, a member or holder of a financial interest in an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC." *NVK Spinning Co. v. Nichols*, No. 12-2904, 2014 U.S. Dist. LEXIS 115, at *12 (W.D. Tenn. Jan. 2, 2014) (citing Tenn. Code Ann. § 48-217-101(a)(1)).  "This limitation on personal liability is preserved notwithstanding the failure of 'an LLC to observe the usual company formalities or requirements relating to the exercise of its LLC power or management of its business.'"  *Id.* (quoting Tenn. Code Ann. § 48-217-101(e)).

"Tennessee law strongly disfavors piercing the corporate veil."  *Id.*  "'Piercing the corporate veil' to impose personal liability is an equitable remedy 'to be applied with great caution and not precipitously, since there is a presumption of corporate regularity.'"  *Id.* (quoting *Schlater*

19

*v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)). "Tennessee courts will disregard an entity's form 'only in extreme circumstances to prevent the use of a corporate identity to defraud or perform illegal acts.'" *Id.* at **12–13 (*Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012)).

> Factors to be considered in determining whether the pierce the corporate veil include:

> 1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's length relationships among related entities.

*Bristol Pres., LLC v. IGC-Bristol, LLC*, No. 2:16-CV-360, 2017 U.S. Dist. LEXIS 97937, at **21–22 (E.D. Tenn. June 26, 2017) (quoting *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). However, the applicability of these factors—particularly as they apply to a single-member LLC—is not enough to pierce the corporate veil in the absence of fraud. *NVK Spinning Co.*, 2014 U.S. Dist. LEXIS 115, at *14 ("The fact that a shareholder exercises complete dominion and control over a corporation alone is insufficient to justify piercing the corporate veil; . . . [s]uch control must have been used to commit fraud . . . ." (quoting *Edmunds*, 403 S.W.3d at 831)). Further, the "fraud" allegedly committed by the corporate member must extend beyond a mere breach of contract at issue in the case. *S.e. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 679–80 (6th Cir. 2006).

Plaintiff's sole allegations against Doyle are that Medical Exporters operated out of Doyle's home; that Doyle is Medical Exporters' sole members and employee; and that Doyle

"occasionally" wired funds to Plaintiff from his personal bank account. (1st Am. Compl. (Dkt. # 7), ¶¶ 16, 17, 34.) Plaintiff's remaining allegations against Doyle are purely conclusory and/or made on "information and belief" without any supporting factual allegations. *See e.g.*, *id.* ¶ 18 ("Upon information and belief, . . . Doyle and/or Medical Exporters diverted assets and/or monies to the detriment of [Plaintiff]."); ¶ 19 ("Upon information and believe, Doyle has used Medical Exporters . . . to achieve an inequitable result and Doyle has abused the corporate form to promote fraud or injustice."); ¶ 20 ("Medical Exporters acts as a conduit to carry on Doyle's personal business . . . .").) The few specific facts alleged and conclusory statements of wrongdoing are insufficient to establish liability against Doyle. *See, e.g.*, *Bristol Preservation, LLC*, 2017 U.S. Dist. LEXIS 97937, at *25 n.5. Moreover, Plaintiff's allegations that he engaged in more than 50 prior transactions with Medical Exporters over several years prior to the Siemens transactions (1st Am. Compl. (Dkt. # 7), ¶ 30) are entirely inconsistent with the contention here that Medical Exporters is a mere "sham or dummy" that has been used to perpetuate a fraud in contravention of public policy. *See, e.g.*, *Howard Indus. v. BADW Grp., LLC*, No. 2:16-CV-168, 2018 U.S. Dist. LEXIS 78138, at *9 (E.D. Tenn. May 9, 2018); *Prof'l Staffing Co. v. Cal W. Packaging Corp.*, No. 14-2480, 2015 U.S. Dist. LEXIS , at *9 (W.D. Tenn. July 31, 2015); *Cricket Communcs., Inc. v. Eleiwa & Sons, Inc.*, No. 2:08-CV-02541, 2009 U.S. Dist. LEXIS 104934, at **4–7 (W.D. Tenn. Nov. 10, 2009). Plaintiff's claims against Doyle should be dismissed.

## IV.  CONCLUSION

Plaintiff has wildly overreached in what should be a straightforward breach of contract action as contemplated by Plaintiff's Agreements which, as drafted by Plaintiff, limit his recovery for any disputes "arising out of the [Agreements]" to ordinary contract damages. Plaintiff's tort, declaratory judgment, and equitable claims must be dismissed as must all claims against Doyle

against whom no facts have been alleged to establish the extreme circumstances necessary to pierce the corporate veil. Defendants' Motion for Judgment on the Pleadings should be granted.

Respectfully submitted,

**LANG & ASSOCIATES, PLLC**

*/s/ Shannon A. Lang*
Shannon A. Lang (*pro hac vice*)
Texas Bar No. 24070103
shannon.lang@shannonlanglaw.com
4301 Yoakum Boulevard
Houston, Texas 77006
(832) 479-9400 tel.
(832) 479-9421 fax

***Attorney for Defendants/Counter-Plaintiff***
***Patrick Doyle and Medical Exporters, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system, which should have generated and delivered notice of filing to all counsel of record.

*/s/ Shannon A. Lang*
Shannon A. Lang

22